UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 01-2433 (DSD/SRN)

**Dean Thompson and Lolly Ann Thompson,**

**Plaintiffs,**

**v.**

**REPORT AND RECOMMENDATION**

**Lutheran Brotherhood and Lutheran Brotherhood Variable Insurance Products Company,**

**Defendants.**

---

Richard Bale, Esq., on behalf of Plaintiffs

Edward T. Wahl, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss (Doc. No. 19). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I. BACKGROUND

This is a "vanishing premium" case similar to that described in In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., 201 F.R.D. 456, 457 (D. Minn. 2001). Defendant[1]

[1] Defendants Lutheran Brotherhood and Lutheran Brotherhood Variable Insurance Products Company will be referred to simply as Defendant or Lutheran Brotherhood.



OCT 23 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

is a non-profit fraternal benefit society that, among other activities, sells insurance products. In 1985, Willard Wilson, a district representative of Defendant, contacted Dean Thompson regarding his paid up Lutheran Brotherhood life insurance policies. Wilson met with Dean and Lolly Thompson at their home. Wilson, using software projections, told the Thompsons that Dean Thompson could fund a new Lutheran Brotherhood policy with a $500,000 face amount by utilizing the cash surrender value of his existing polices as an initial payment. Annual premium payments in the amount of $1,800 would be due thereafter. At some time in the future, however, Wilson told the Thompsons that all premium payments would be paid by future dividends and/or policy values, and, hence, the premiums for the policy would vanish. Based on computer generated projections, Dean Thompson would have a death benefit of $906,939 and a projected cash value of $446,757 at age 65. Plaintiffs allege, *inter alia*, that Defendant developed its sales strategy and products based on a variety of unsustainable, risky assumptions that were not disclosed to Plaintiffs. Plaintiffs allege that Defendants knew the assumptions were unsustainable. Dean Thompson purchased the new policy, #2152003 (the 1985 policy), on January 24, 1985 and made a $16,450 payment on September 24, 1987 so that no additional premium payments would be due.

In January of 1994, Defendant sent Dean Thompson an update on his policy. Mr. Thompson became "alarmed" because the cash value of his policy was less than the projections that Defendant gave Mr. Thompson at the time he purchased the policy. Thereafter, Dean Thompson contacted his Lutheran Brotherhood agent who recommended that Mr. Thompson surrender the existing policy and apply the surrender value to a new policy. The new policy was supposed to provide greater returns by investing in mutual funds. Thus, on February 3, 1994,

Dean Thompson converted the 1985 policy into policy #V2871400 (the 1994 policy). The 1985 policy's cash surrender value, $36,818, was applied to the 1994 policy. Lolly Thompson made a similar conversion on the same day. Ultimately, Plaintiffs' 1994 policies faltered and the cash values of the policies declined.

On or about February 24, 1999, a class action was filed in this Court entitled In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., in which Plaintiffs were unnamed class members. On December 28, 2001, Plaintiffs filed the instant suit.

Plaintiffs have brought claims for: (1) violation of the Minnesota Prevention of Consumer Fraud Act (CFA), Minn. Stat. § 325F.68-325F.70; (2) violation of Minnesota Deceptive Trade Practices Act (DTPA), Minn. Stat. § 325D.44; (3) common law fraud; (4) breach of fiduciary duty; and (5) negligent misrepresentation.[2]

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), to dismiss all of Plaintiffs' claims. Defendant asserts that the CFA and DTPA statutory claims are barred by the applicable statute of limitations, Minn. Stat. § 541.05, subd. 1(2), and that the three common law claims are also barred by the applicable statute of limitations, Minn. Stat. § 541.05 subd. 1(5) and (6). Alternatively, Defendant argues that Plaintiffs' CFA and common law fraud claims should be dismissed because Plaintiffs have not pled fraud with particularity and the alleged misrepresentations relate to unactionable future events. Finally, Defendant argued in its reply memorandum and at the hearing on this matter that Plaintiffs' breach of fiduciary duty

---

[2] Although the complaint contains allegations concerning Lolly Thompson's 1977 policy, Plaintiffs conceded at the hearing on this matter that they are not making any claims regarding the 1977 policy. Thus, the claims in the complaint concern only Dean Thompson's 1985 policy, Dean Thompson's 1994 policy, and Lolly Thompson's 1994 policy.

claim fails to state a claim.

The parties have agreed, at least for purposes of this motion, that Minnesota law applies. (Def.s' Mem. in Supp. of Mot. to Dismiss, at 6 n.3).

## II. DISCUSSION

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff. E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court "may dismiss 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" E.g., Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

### A. Breach of Fiduciary Duty Claim

Defendant asserts that "under Minnesota law, no fiduciary relationship exists between an insurer and insured." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 7). Defendant is mistaken.

"[T]here is no per se rule precluding the existence of a fiduciary relationship between an insurer and its insureds." Parkhill v. Minnesota Mut. Life Ins. Co. (Parkhill III), 174 F.Supp.2d 951, 959 (D. Minn. 2000) (citing Stark v. Equitable Life Assur. Soc. of U.S., 285 N.W. 466, 469-70 (Minn. 1939)); accord Parkhill v. Minnesota Mut. Life Ins. Co. (Parkhill I), 995 F.Supp. 983, 991 (D. Minn. 1998) (finding no case law in either Minnesota or Florida precluding the existence

of a fiduciary relationship between an insurer and an insured); see also Force v. ITT Hartford Life & Annuity Ins. Co., 4 F.Supp.2d 843, 853-54 (D. Minn. 1998).[3] Rather, "the existence of a fiduciary relationship is a question of fact dependent on the circumstances of each individual case." Parkhill I, 995 F.Supp. at 991; accord, e.g., Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985). A fiduciary relationship can arise "'when confidence is reposed on one side, and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.'" Stark, 285 N.W. at 470 (citation omitted).

Plaintiffs alleged, which the Court takes as true, that one of Lutheran Brotherhood's objectives is to "'serve its membership by aiding Lutheran church bodies, their institutions and congregations, by, *inter alia*, 'furnishing protection and issuing benefit contracts.'" (Compl. ¶14). Lutheran Brotherhood targets eligible fraternal members, those baptized in the Lutheran faith, those who profess to believe in the Lutheran faith, or those affiliated with a Lutheran Church, to market its insurance products. Id. at ¶14-15. Among other things, Plaintiffs also allege that Lutheran Brotherhood acknowledges that its customers are not sophisticated enough to understand the complex nature of its insurance products and that Lutheran Brotherhood repeatedly identifies its relationship with its customers as one of trust and confidence. Id. at ¶18-22 (quoting the Lutheran Brotherhood policy on Field Force *Fiduciary* Responsibility). Indeed,

---

[3] The Court notes that the Force Court "appl[ied] Florida substantive law to the Plaintiffs' common law claims, but [was] constrained to do so only when that law differs materially from the substantive law of Minnesota." 4 F.Supp.2d at 850. Nonetheless, the Force Court's discussion of Florida law is equally applicable to Minnesota law. Compare Force, 4 F.Supp.2d at 853-54, with Parkhill I, 995 F.Supp. at 991.

Defendant's very name, Lutheran (an association of people bound together by a common faith) Brotherhood (suggesting trust and fellowship amongst all who join), implies "'an ability to place trust and reliance upon the broad shoulders of the kindly [Brotherhood].'" Dornberger v. Metro. Life Ins. Co., 961 F.Supp. 506, 547 n.39 (S.D.N.Y. 1997) (citation omitted).[4]

It is axiomatic that "a complaint should not be dismissed merely because the court doubts that a plaintiff will prevail in the action." Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); see also In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-MD-1309, 2003 WL 21737528, at *11-12 (D. Minn. July 22, 2003) (finding, *on a motion for summary judgment*, that the individual plaintiffs had not established a fiduciary relationship). Given that the existence of a fiduciary relationship is governed by the unique facts and circumstances of individual cases, e.g., Toombs, 361 N.W.2d at 809, this Court can hardly hold that "'it is clear that no relief can be granted under *any set of facts* that could be proved *consistent with the allegations*.'" Frey, 44 F.3d at 671 (emphasis added). In fact, the opposite is true. Parkhill I, 995 F.Supp. at 991 (denying a *motion for summary judgment* on a breach of fiduciary claim

---

[4] The undersigned, as have other Judges within this district, finds the reasoning in Dornberger and the following footnote from it persuasive:

> A leading treatise states that older decisions which refused to recognize a fiduciary relationship between insurer and insured may now be "out of step with current concepts." 12 John Alan Appleman & Jean Appleman, Insurance Law and Practice §§ 7004 (1981). The treatise notes that "[p]articularly is this approach outmoded when television advertising repeatedly refers to 'the good hands' of the insurer or how it is 'like a good neighbor', implying an ability to place trust and reliance upon the broad shoulders of the kindly company." *Id.*

961 F.Supp. at 547 n.39. See also Parkhill I, 995 F.Supp. at 991 (Doty, J.); Force, 4 F.Supp.2d at 854 n.11 (Kyle, J.).

between insurer and insured);[5] Force, 4 F.Supp.2d at 854 (denying a motion to dismiss a breach of fiduciary duty claim in a quite similar vanishing premium case); see also Cunningham v. PFL Life Ins. Co., 42 F.Supp.2d 872, 888-89 (N.D. Iowa 1999) (applying Iowa law and denying motion to dismiss a breach of fiduciary duty claim between an insurer and insured in a similar case). Accordingly, Defendant's motion to dismiss the breach of fiduciary duty claim (Count Three) should be denied.

As discussed more fully below, the potential existence of a fiduciary relationship, at least at this stage in the proceedings, impacts on the fraud claims and tolling of the statute of limitations. See Murphy v. Country House, Inc., 240 N.W.2d 507, 512 (Minn. 1976) ("The genuine issue concerning existence of a fiduciary obligation is material to the fact of Murphy's discovery of the fraud.").

### B. Statute of Limitations

Federal jurisdiction is based on diversity. Therefore, "Minnesota's substantive law, including its statute of limitations, applies." Larsen v. Mayo Med. Ctr., 218 F.3d 863, 866 (8th Cir. 2000) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)).

The parties agree that the CFA (Count I) and DTPA (Count Four) claims are governed by a six-year statute of limitations, Minn. Stat. § 541.05, subd. 1(2). The parties agree that the three common law claims, fraud, breach of fiduciary duty, and negligent misrepresentation, are

---

[5] The motion in Parkhill I appeared to be an early motion for summary judgment prior to any significant discovery. Parkhill III, 174 F.Supp.2d at 956. Upon completion of discovery, the Court granted defendant's renewed motion for summary judgment on the breach of fiduciary duty claim. Id. at 959-60.

governed by a six-year statute of limitations, Minn. Stat. § 541.05, subd. 1(1) and (6).[6] This is where the parties' agreement ends.

Defendant argues that the statute of limitations for the statutory claims, CFA and DTPA, began to run at the time of the sale of the policies. Defendant concludes that the 1985 and 1994 policies were sold approximately seventeen and seven years prior to December 28, 2001, the date Plaintiffs filed suit, and, therefore, Plaintiffs' CFA and DTPA claims are barred by the six-year statute of limitations. Furthermore, Defendant argues that Minn. Stat. 541.05 subd. 1(2) does not provide for a discovery period, and this Court should not create one under a different name. As for the common law claims, Defendant argues that Plaintiffs had actual notice of their claims in 1994 when they became "alarmed" after receiving an update from Lutheran Brotherhood, and, therefore, the common law claims, asserted over seven years after discovery, are barred by the six year limitation period.

Plaintiff argues that fraudulent concealment tolls the statute of limitations for all of their claims related to the 1985 policy and 1994 policies. Plaintiffs also assert that equitable estoppel prevents Defendant from asserting the statute of limitations. Finally, Plaintiffs argue that the statute of limitations was tolled when they became unnamed members of a class action in 1999.

---

[6] Defendant appears to assert that Minn. Stat. § 541.05, subd. 1(5) is the applicable statute of limitations for the breach of fiduciary duty claim. (Def.s' Mem. in Supp. of Mot. to Dismiss, at 7). Although it makes no difference for purposes of this motion, it appears that the applicable statute of limitations for a breach of fiduciary duty claim is Minn. Stat. § 541.05, subd. 1(1) ("upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;"). See Dow v. Dow, 1989 WL 87192, at *1 (Minn. App. Aug. 8, 1989) ("[C]ount three, alleging breach of fiduciary duty, is vulnerable to the six-year statute of limitations period pursuant to Minn. Stat. § 541.05, subd. 1(1).").

### 1. Tolling of the Statute of Limitations

The statute of limitations for Plaintiffs' CFA and DTPA claims, Minnesota Statute § 541.05, subd. 1(2), does not have a discovery allowance, and, therefore, "the six year limitations period commenced on the date of sale, [1985 and 1994], when each of the alleged statutory violations occurred." Klehr v. A.O. Smith Corp., 875 F.Supp. 1342, 1353 (D. Minn. 1995); accord Veldhuizen v. A.O. Smith Corp., 839 F.Supp. 669, 676 (D. Minn. 1993).

As a general rule, however, "fraudulent concealment tolls the statute of limitations." Schmucking v. Mayo, 235 N.W. 633, 634 (Minn. 1931); accord DeCosse v. Armstrong Cork Co., 319 N.W.2d 45, 50-51 (Minn. 1982). As aptly stated by the Minnesota Supreme Court long ago, two reasons support this general rule:

> First, one who cannot assert his right because the necessary knowledge is improperly kept from him is not within the mischief the statute was intended to remedy; but is within the spirit of the law that restrains its operation. There is no reason, resting on general principles, why ignorance that is the result of defendant's actual fraud and not the stupidity or lack of diligence of plaintiff should not prevent the running of the statute in favor of the wrongdoer. Secondly, a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so.

Schmucking, 235 N.W. at 634.

This Court holds that the general rule that fraudulent concealment tolls the statute of limitations applies to the statute of limitations for CFA and DTPA claims, Minn. Stat. § 541.05, subd. 1(2).[7]

The undersigned is mindful that another Judge within this district, dealing with the class

[7] The following discussion applies equally to Plaintiffs' common law claims, and it does not appear that Defendant disputes that fraudulent concealment will toll the statute of limitations for Plaintiffs' common law claims.

action against Lutheran Brotherhood, has refused to apply the fraudulent concealment doctrine to toll the limitations period for a CFA claim. In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-MD-1309, 2002 WL 1023150, at *3 (D. Minn. May 17, 2002). In that case, the Court stated:

> It is not clear to this Court that the doctrine of fraudulent concealment is different than a discovery allowance, which both parties agree does not apply to CFA claims. The Court is reluctant to allow untimely claims to proceed under the discovery allowance theory merely re-named the fraudulent concealment doctrine.

Id.

This Court respectfully disagrees.[8] This Court is not being asked to engraft the discovery allowance from § 541.05, subd. 1(6) onto subd. 1(2). Rather, the Court "appl[ies] a generally accepted, and judicially created, tolling doctrine to the [limitations period for CFA claims]." DeCosse, 319 N.W.2d at 50 (footnote omitted). The Minnesota Supreme Court first adopted the doctrine that fraudulent concealment tolls a limitation period in 1931, Schmucking, 235 N.W. at 634; see also DeCosse, 319 N.W.2d at 50, and the Minnesota courts have applied the doctrine to toll limitation periods ever since. See Wild v. Rarig, 234 N.W.2d 775, 795 (Minn. 1975) ("[T]he

[8] Although "[t]he doctrine of fraudulent concealment is very similar to the discovery rule," Cohen v. Appert, 463 N.W.2d 787, 791 (Minn. App. 1990), the two concepts are distinct. A discovery rule operates to prevent accrual of a cause of action while fraudulent concealment operates to toll the running of a limitations period. A discovery allowance may exist in the absence of affirmative concealment. Moreover, fraud and fraudulent concealment are distinct concepts; one may have a claim for fraudulent conveyance of property but be unaware of it because the perpetrator has fraudulently concealed the facts giving rise to the claim by, for example, burying the relevant documents in ground. See Schmucking, 235 N.W. at 634 ("If one's legal title to property is endangered by the fraud of another, the courts will give relief; and if the rights which one has to a legal remedy to establish such title be defeated, by a like fraud, is not the principle the same?").

general rule [is] that for most causes of action fraudulent concealment of the existence of a cause of action will toll the statute of limitations . . . .") (citing Schmucking); see also, e.g., DeCosse, 319 N.W.2d at 49-52 (applying the fraudulent concealment doctrine to toll the statute of limitations period of the Minnesota Wrongful Death Act while specifically rejecting a discovery allowance); Henning v. Krahmer and Bishop, P.A., 1993 WL 140869, at *1 (Minn. App. May 4, 1993) (rejecting a discovery rule for legal malpractice actions but explaining that fraudulent concealment would toll the limitations period).

While it does not appear that Minnesota courts have specifically held that fraudulent concealment will toll the limitations period for CFA claims, Minnesota courts "presume[] that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000). The limitations period here simply provides that "the following actions shall be commenced within six years: . . . (2) upon a liability created by statute." Minn. Stat. § 541.05, subd. 1(2). Nothing in the statute suggests that it abrogates the common law application of the fraudulent concealment doctrine as a tolling mechanism. See DeCosse, 319 N.W.2d at 51 ("[T]here is no indication from the legislature that it wished to exempt the statutorily created wrongful death action from the common law rules that seek to avoid rewarding fraud."). Indeed, in Force v. ITT Hartford Life & Annuity Ins. Co., 4 F.Supp.2d 843, 859-60 (D. Minn. 1998) (Kyle, J.), the Court, on a motion to dismiss in a very similar case, rejected the argument that the statute of limitations barred claims under the Minnesota Deceptive Trade Practices Act and the Minnesota Consumer Fraud Act because the effect allegations of fraudulent concealment had on the statute of limitations was to "raise issues of fact that are not amenable to disposition on a

motion to dismiss for failure to state a claim on which relief can be granted." (citing Holstad v. Southwestern Porcelain, Inc., 421 N.W.2d 371 (Minn. App. 1988) (discussing the effect fraudulent concealment has on the statute of limitations)).[9] Likewise, the Minnesota Court of Appeals has stated that "fraudulent concealment tolls the statute of limitations so appellants may have additional claims for . . . violation of the Deceptive Trade Practices Act, Minn. Stat. § 325D.44 (1990)." Appletree Square I Ltd. Partnership v. Investmark, Inc., 494 N.W.2d 889, 892 (Minn. App. 1993).

Moreover, Minn. Stat. § 541.05, subd. 1(2) is entirely distinguishable from the statute at issue in, Kopperud v. Agers, 312 N.W.2d 443, 447 (Minn. 1981), where the Minnesota Supreme Court found that the statutory "language expressly excludes the fraudulent concealment exception usually applied." See DeCosse, 319 N.W.2d at 51, 51 n.14 (distinguishing Kopperud).

Thus, the Court holds that fraudulent concealment will toll that statute of limitations for CFA and DTPA claims. "Fraud is bad, it should not be permitted to go unchecked anywhere,

---

[9] In Veldhuizen v. A.O. Smith Corp., 839 F.Supp. 669, 677 n.7 (D. Minn. 1993) (Doty, J.), the Court "assum[ed] without deciding that the limitations period [for a CFA claim] was tolled until the fraud and its concealment was discoverable," but nevertheless held that "the claim for violation of the Minnesota Consumer Fraud Law is time-barred." The Court was able to hold, even assuming fraudulent concealment tolled the CFA limitation period, that the claim was time-barred because the Court also held that the undisputed evidence showed that the plaintiffs, "by the exercise of reasonable diligence, should have realized by 1980 at the latest that defendants made false representations concerning the qualities of the Harvestore silos," id. at 676, and, *ordinarily*, but see Stark v. Equitable Life Assur. Soc., 285 N.W. 466, 472 (Minn. 1939), fraudulent concealment only tolls the statute of limitations "until the party discovers, or has a reasonable opportunity to discover, the concealed defect." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 918 (Minn. 1990).

and justice should always be able to penetrate its armor." Schmucking, 235 N.W. at 634.

**a. Application of the Fraudulent Concealment Doctrine**

Fraudulent concealment tolls the statute of limitations until "the time the cause of action is discovered or might have been discovered by the exercise of diligence." Id.; accord, e.g., Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 918 (Minn. 1990); Wild, 234 N.W.2d at 795. Although "[t]here is no categorical definition of what constitutes fraudulent concealment," Wild, 234 N.W.2d at 795, the Restatement (Second) of Torts § 550 "describes the situations in which fraudulent concealment is commonly applied."[10] DeCosse, 319 N.W.2d at 51. A few relevant principles can be generally stated. For example, "[b]reach of a fiduciary duty to disclose facts is one variety of fraudulent concealment." Appletree Square, 494 N.W.2d at 894. In addition, "[a] defendant fraudulently conceals a cause of action if it knows its representations are false or makes representations with reckless disregard for the truth." Holstad v. Southwestern Porcelain, Inc., 421 N.W.2d 371, 374 (Minn. App.1988); see also Force, 4 F.Supp.2d at 859-60. Likewise, "actively concealing a defect or disadvantage in something constitutes fraudulent concealment." DeCosse, 319 N.W.2d at 51. Finally, fraudulent concealment occurs "when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation." RESTATEMENT (SECOND) OF TORTS § 550 (1977).

Plaintiffs have "the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on [their] part and was not the result of [their] own

---

[10] The Minnesota Supreme Court has also pointed to the Corpus Juris Secundum, Limitations of Actions, for guidance. Wild, 234 N.W.2d at 795.

negligence." Wild, 234 N.W.2d at 795. Plaintiffs have met their pleading burden. Plaintiffs' allegations in the complaint raise factual questions regarding every example of fraudulent concealment noted above.

Defendant's main argument is that when Dean Thompson received an update in 1994 and became "alarmed" because the cash value of his policy was less than the projections given to him at the time he purchased the policy in 1985, Mr. Thompson had notice of his claims and such alarm also put Plaintiffs on notice regarding their newly purchased 1994 contracts. Defendant also pigeonholes all of Plaintiffs' claims as "based on the alleged failure of their contracts to function as represented." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 5). Defendant's arguments are unpersuasive.

As Plaintiffs' complaint reveals, the crux of Plaintiffs' claims are based on non-disclosure of critical information regarding the insurance policies. (Compl. ¶9, 19, 25-27, 29, 30, 31, 35, 37-38, 39-53, 56, 59-64, 80-81, 85-87). See generally H Enter. Intern., Inc. v. Gen. Elec. Capital Corp., 833 F.Supp. 1405, 1423-24 (D. Minn. 1993) (explaining the variety of circumstances that failure to disclose can be fraudulent). Plaintiffs allege throughout the complaint, and thoroughly so, that Defendant actively concealed a variety of financial information, assumptions, and other factors critical to their decision to purchase the policies, and that they did not have knowledge of these defects. See Hydra-Mac, 450 N.W.2d at 918 (explaining that "[m]erely establishing that a defendant had intentionally concealed the alleged defects is insufficient; the claimant must establish that it was actually unaware that the defect existed before a finding of fraudulent

concealment can be sustained").[11] Thus, the fact that Dean Thompson was alarmed when he received an update did not provide him actual notice of his claims based on a failure to disclose.

Moreover, to the extent the fraud claims are based on the failure of the policies to perform as projected, Dean Thompson's alarm in 1994 regarding his 1985 policy update did not provide actual notice of a fraud claim; it merely suggested that Mr. Thompson may have been damaged. See Force, 4 F.Supp.2d at 846-49, 859-60; Veldhuizen, 839 F.Supp. at 675-76, 676 n.5. In Force, the Court, on a motion to dismiss, declined to hold as a matter of law that "the Plaintiffs knew or should have known the truth about their insurance policies when they received the written policies and illustrations." 4 F.Supp.2d at 859. Similarly, in Veldhuizen, the defendants made a variety of representations concerning the performance of storage/grain silos such as higher milk production, eliminating the need for protein supplements, reduced spoilage, and healthier cattle. Id. at 672. Over a period of years of use, all of these representations regarding the silo's performance proved false, yet the Court aptly noted that "the Veldhuizens did not have actual, subjective knowledge of the alleged fraud until near the time they filed suit." Id. at 676 n.5. Rather, the performance of the silos triggered an obligation to exercise reasonable diligence in discovering the fraud, which also began the running of the limitations period. Id. at 675-76.

Here, even assuming the update sent to Dean Thompson in 1994 regarding his 1985 policy triggered Mr. Thompson's obligation to investigate, there is plainly a fact question not amenable to disposition on a motion to dismiss concerning whether Plaintiffs could have

---

[11] At this stage, Plaintiff need not conclusively establish anything. Rather, the issue is whether "on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1994).

discovered their claims sooner in the exercise of reasonable diligence. Wild, 234 N.W.2d at 795 ("The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence."). This is so because in 1994, when Dean Thompson received the update, he did attempt to make a reasonable investigation. (Compl. ¶70). Mr. Thompson contacted his Lutheran Brotherhood agent who simply channeled Mr. Thompson into another policy promising greater returns (the 1994 policy). Id. at ¶70-71. This sequence of events not only creates a fact question wholly inappropriate for resolution on a motion to dismiss for failure to state a claim, but, at least at this stage in the proceedings, it appears to fall squarely into one type of fraudulent concealment, namely "when the defendant *successfully prevents the plaintiff from making an investigation* that he would otherwise have made, and which, if made, would have disclosed the facts; or *when the defendant frustrates an investigation*." RESTATEMENT (SECOND) OF TORTS § 550 (1977). Indeed, "normally in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for *summary judgment*," Hines v. A.O. Smith Harvestore Prod., Inc., 880 F.2d 995, 999 (8th Cir. 1989) (emphasis added); accord, e.g., Schmucking, 235 N.W. at 633; Appletree Square, 494 N.W.2d at 894, let alone a motion to dismiss for failure to state a claim.[12]

---

[12] The Court expresses serious concern regarding an argument made in Defendant's brief. In In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2002 WL 1023150, at *3 (D. Minn. May 17, 2002) (Magnuson, J.), the Court held that fraudulent concealment would not toll the statute of limitations for the plaintiffs' statutory (CFA) fraud claims. Alternatively, in *dicta*, the Court noted that even if fraudulent concealment did toll the limitations period for CFA claims, "Plaintiffs have failed to show that they did not have a reasonable opportunity to discover the alleged fraud until their premiums did not vanish as promised." Id. In support of that *dicta*, the Court cited evidence submitted by the defendants

(Wahl Aff. Ex. 40 at 2) that demonstrated that at least one of the plaintiffs, "Mr. Deon Thompson [not to be confused with Dean Thompson], received annual statements from Lutheran Brotherhood that told him as early as 1988 that his policy would terminate in 1993 if no further premiums were paid" and "[t]hese statements should have alerted Plaintiffs to the fact that the policies were not performing as Lutheran Brotherhood allegedly promised they would." Id.

Later, in a Memorandum and Order on July 22, 2003, the Court (Magnuson, J.) addressed Lutheran Brotherhood's motion for summary judgment on the plaintiffs' common law fraud and breach of fiduciary duty claims. Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2003 WL 21737528, at *9-10 (D. Minn. July 22, 2003). In that motion, Lutheran Brotherhood relied on the Court's *dicta* in the May 17, 2002 Order to argue that the plaintiffs' common law fraud claim was also barred by the statute of limitations because the plaintiffs should have known of the existence of the claim. Id. at *9. The Court rejected this argument for two reasons, both of which are relevant here. First, the Court explained that the "dicta [from the May 17, 2002 Order could not] have definitively decided the issue: whether a plaintiff knew or should have known of the existence of his or her claim is a question of fact that cannot be resolved on a motion for summary judgment." Id. Next, the Court noted "a more troubling aspect to Lutheran Brotherhood's argument." Id. at *10. The Court explained that the evidence it relied on as the basis for its *dicta* in the May 17, 2002 Order, namely the evidence that Deon Thompson received a notice in 1988, was erroneous because that notice, which was submitted as evidence by Lutheran Brotherhood's attorneys, "related to a policy that is not at issue here." Id. The Court then admonished Lutheran Brotherhood:

> Lutheran Brotherhood should have brought that error to the Court's attention, but at the least, Lutheran Brotherhood should not now attempt to capitalize on that error by using the Court's mistaken assumption as support for the instant Motion. The Court reminds counsel for both parties of their duties as officers of the Court, and will not countenance misrepresentations of the facts or the law, whether intentional or inadvertent. *See* Pinkham v. Sara Lee Corp.,983 F.2d 824, 833 (8th Cir. 1992).

Id. at 10.

Remarkably, in this case, Lutheran Brotherhood, again, attempts to capitalize on the evidentiary error from the May 17, 2002 Order in In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2002 WL 1023150, at *3 (D. Minn. May 17, 2002) (Magnuson, J.). In this case, Lutheran Brotherhood states that "[c]ourts do not hesitate to dismiss claims where facts pleaded, or otherwise on the record, show that a party knew or should have known of the facts long enough before commencing their action that the action is time-barred." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 4). In support of that proposition, Lutheran Brotherhood leads with a citation to the May 17, 2002 Order: "*See In re Lutheran Bh'd*, 2002 WL 1023150, at *3 (plaintiffs had the opportunity, as a matter of law, to discover claims where the record showed that plaintiffs received statements that 'should have alerted Plaintiff[] to the fact that the policies were not performing as Lutheran Brotherhood allegedly promised they would')." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 4). The parenthetical explanation

Therefore, at the very least, there is a fact question regarding whether the statute of limitations was tolled for *all* of Dean Thompson's 1985 policy claims because of fraudulent concealment. Equally true, given all of the foregoing, is the proposition that there is a fact question regarding whether Mr. Thompson should have discovered, given the presence of a discovery allowance, the three common law claims regarding the 1985 policy. The 1994 policy claims (both Dean and Lolly Thompson have 1994 policies) are separate transactions and there was nothing to put Plaintiffs on notice of their 1994 policy claims. Accordingly, at the very least, there is a fact question regarding whether the statute of limitations was tolled for *all* of Plaintiffs' 1994 policy claims because of fraudulent concealment. Again, given all of the foregoing, there is a fact question regarding whether Plaintiffs should have discovered, given the presence of a discovery allowance, their three common law claims regarding the 1994 policies. At this point, this Court need not consider Plaintiffs' arguments that the statute of limitations was tolled by the class action or that equitable estoppel applies.

In addition, in supra Part II(A), the Court held that there is a potential fiduciary relationship between the parties (i.e., Plaintiffs have stated a claim for breach of fiduciary duty). Thus, the Court alternatively holds that "under such circumstances it is unnecessary to prove diligence in discovering the fraud." Stark v. Equitable Life Assur. Soc., 285 N.W. 466, 472

---

of the May 17, 2002 Order is not only patently erroneous as a matter of law, In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., 2003 WL 21737528, at *9 ("Nor could that dicta have definitively decided the issue . . . ."), but Lutheran Brotherhood, again, by seeking to do what Judge Magnuson admonished them not to do, seeks to capitalize on the "Court's mistaken assumption as support for" the Motion to Dismiss in this case. Id. *10.

(Minn. 1939); accord Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985) ("Delay in discovering fraud may be excusable when a confidential relationship exists."); Murphy v. Country House, Inc., 240 N.W.2d 507, 512 (Minn. 1976) (same); Lenhart v. Lenhart Wagon Co., 298 N.W. 37, 40 (Minn. 1941) ("Bearing upon questions of diligence and duty to investigate, several rules are pertinent. There being a fiduciary relationship . . . the law does not require the beneficiary to anticipate the worst of his benefactor.") (citing Stark); Keough v. St. Paul Milk Co., 285 N.W. 809, 815 (Minn. 1939) ("When a confidential relationship exists failure to discover fraud is looked upon with more indulgence since generally a false sense of security and trust is present in the mind of the injured party. The statute of limitations is not a bar."); Appletree Square, 494 N.W.2d at 894 ("Where a fiduciary relationship exists, a delay in discovering the concealed facts may be excusable."). The rationale for excusing discovery of fraud where a fiduciary relation exists was explained by Stark as follows:

> As we have said, diligence in attempting to discover fraud is required under our statute because of principles of equity established prior to its adoption. By a parity of reasoning, the application of the requirement of due diligence should be limited to the field fixed by the decisions of the equity courts which developed the general rule. And at equity diligence was not required if the defrauding party stood in a fiduciary or other relation of trust and confidence to the party defrauded. See Banning, Limitation of Actions, (3rd ed.) p. 224, where it is said: 'In some cases, the fraud is itself the cause of action; * * * And in * * * these * * * cases, the time commences to run only as from the date of the discovery of the fraud,–or (where the defendant is not in any fiduciary or quasi-fiduciary relation to the plaintiff) as from the date when the fraud might with reasonable diligence have been discovered; but if the defendant is in a fiduciary or quasi-fiduciary relation, it is not competent, * * *, for him to impute to the plaintiff that the plaintiff has been wanting in diligence.'

285 N.W. at 472.

Accordingly, any delay by Plaintiffs in discovering their claims was, at this stage, legally

excusable.

### C. Particularity

Defendant argues that Plaintiffs have failed to allege fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b). Defendant asserts that the allegation concerning the 1985 policy did not provide it with information about what was said, how the representations were made, the time frame, or how the representation was fraudulent. Defendant makes the same argument about the 1994 policies and notes that the allegations regarding the 1994 policies are even more sparse.

As an initial matter, Defendant's arguments are without merit because Plaintiffs' fraud claims are based in large part on non-disclosure, i.e., what was not said. (Compl. ¶¶9, 19, 25-27, 29, 30, 31, 35, 37-38, 39-53, 56, 59-64, 80-81, 85-87). See generally Klein v. First Edina Nat. Bank, 196 N.W.2d 619, 622 (Minn. 1972) (explaining the variety of circumstances that failure to disclose can be fraudulent); H Enter., 833 F.Supp. at 1423-24 (same). As mentioned, Plaintiffs allege throughout the complaint, and thoroughly so, that Defendant actively concealed and failed to disclose a variety of financial information, assumptions, and other factors critical to their decision to purchase the policies, and that they did not have knowledge of these defects. Plaintiffs allege that at the height of the interest rate surge in the 1980s Defendant developed policies and marketing tools based on a variety of assumptions that Defendant knew were unsustainable. Plaintiffs assert that Defendant marketed its products through inflated projections and representations that Defendant admits were of "questionable" worth. At no time, however, did Defendant disclose the unsustainable assumptions underlying the products. See H Enter., 833 F.Supp. at 1423 ("Minnesota has long recognized that even if one has no duty to disclose a

particular fact, if one chooses to speak he must say enough to prevent the words from misleading the other party."); Klein, 196 N.W.2d at 622.[13] Thus, fraudulent non-disclosure for the 1985 policy and the 1994 policies was pled with particularity.

Furthermore, the Court finds that the allegations regarding the affirmative misrepresentations and the 1985 policy are sufficiently particular. Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) "'[c]ircumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997). Here, Defendant is aware that the time of the misrepresentation was January of 1985. (Compl. ¶66). The place the misrepresentation was made was at the Plaintiffs' home. Id. The identity of the person making the misrepresentation was Lutheran Brotherhood agent Willard Wilson. Id. The contents of the misrepresentation was that at a point in the future, no out-of-pocket premiums would be necessary because premium payments would be paid by dividends and/or policy values. Id. at ¶ 67. Defendant is aware how the misrepresentation was made; through software projections

---

[13] At this stage, the three circumstances in which non-disclosure can be fraudulent are all arguably applicable to this case:

> (a) One who speaks must say enough to prevent his words from misleading the other party.
> (b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.
> (c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

Klein, 196 N.W.2d at 622.

provided by Lutheran Brotherhood's central office. Id. In addition, Defendant is aware that it obtained premium payments and the use of Dean Thompson's money in exchange for the misrepresentation. Id. On the other hand, Mr. Thompson surrendered his existing policy and agreed to make payments on a new policy understanding, according to the projections provided, that his premium payments would eventually vanish. Id. In doing so, Mr. Thompson would obtain, according to the projections, at age 65 a death benefit of $906,939 and cash value of $446,757. Id. at ¶68. Finally, Defendant is aware of the how and why Plaintiffs allege it made the misrepresentations as Plaintiffs thoroughly explain Defendant's development of its policies and how such developments came to affect Plaintiffs.

With regard to affirmative fraudulent misrepresentations and the 1994 policies, the Court grants Plaintiffs leave to amend to particularize any affirmative misrepresentations that may have occurred. There is a strong inference that Plaintiffs are making similar allegations of affirmative misrepresentation regarding the 1994 policies (Lutheran Brotherhood agent channeled Plaintiffs into new policies "which give much more favorable results" (Compl. ¶70-71, 76-77)) as made in connection with the 1985 policy. Cf. Parnes, 122 F.3d at 550 ("Where 'allegations of fraud are explicitly or, as in this case, implicitly, based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief.'") (citations omitted). Nonetheless, such misrepresentations must be more particularized.

### D. Future Events vs. Present Facts

Defendant argues that Plaintiffs' fraud claims fail to state a claim because the claims concern future projections as opposed to present facts. Defendant's argument is without merit.

As discussed above, the crux of Plaintiffs' fraud claims is non-disclosure of then present

existing facts. Therefore, Defendant's argument fails on this basis.

With regard to Dean Thompson's claim regarding the affirmative misrepresentation and the 1985 policy, "the alleged misrepresentations are not the sort of speculative statements that Minnesota courts have found insufficient to support a claim for fraud." In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2003 WL 21737528, at *10 (D. Minn. July 22, 2003). In In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., the Court was confronted with quite similar allegations and found that the representations were actionable. 2003 WL 21737528, at *10 (explaining that "the alleged misrepresentations regarding vanishing premiums were representations that something would happen in the future," but concluding that they were not so speculative as to fail to satisfy the misrepresentation element of common law fraud). This Court follows the decision in In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2003 WL 21737528, at *10 (D. Minn. July 22, 2003). Moreover, since Dean Thompson alleges that Defendant developed its products based on a variety of assumptions that Defendant knew were unsustainable, e.g., (Compl. ¶27, 29, 30, 31, 40, 42)[14], Mr. Thompson's allegations are actionable, even if they concern speculative future events, because the complaint sufficiently alleges "the promisor had no intention to perform at the time the promise was made." Martens v. Minnesota Min. & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000).

---

[14] As an example, paragraph 27 states in part: "Lutheran Brotherhood's senior management also was aware that the universal life product and the vanishing premium policies and the projections used to sell them were inherently misleading because even a small drop in interest rates could cause the policies to self-destruct."

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendants' Motion to Dismiss (Doc. No. 19) be **DENIED**. Plaintiffs are granted leave to amend their complaint to include affirmative misrepresentations regarding their 1994 policies, and such amendments, if any, shall be made within 30 days of the date of this Report and Recommendation.

Dated: October 23, 2003

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 4, 2003, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wising to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.