UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2433(DSD/SRN)

Dean Thompson and
Lolly Ann Thompson,

Plaintiffs,

v.

**AMENDED ORDER**

Lutheran Brotherhood and
Lutheran Brotherhood
Variable Products Company,

Defendants.

Richard W. Bale, Esq., Marcus R. Sanborn, Esq. and Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101, counsel for plaintiffs.

Edward T. Wahl, Esq., Michael F. Cockson, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402 and James F. Jorden, Esq., Jerome V. Bolkcom, Esq., 1025 Thomas Jefferson Street N.W., Suite 400E, Washington, D.C. 20007, counsel for defendants.

This matter is before the court upon defendants' objections to Magistrate Judge Susan R. Nelson's report and recommendation, dated October 23, 2003. In her report, the magistrate judge concluded that defendants' motion to dismiss should be denied. Defendants raise four grounds of objection to the report. The court addresses them in turn.

FILED ______ 2004
Richard D. Sletten, CLERK
Judgment Ent'd. ________
Deputy Clerk's Initials ____

**I. Footnote 12**

Defendants object to Magistrate Judge Nelson's observations in footnote 12 of her report and recommendation regarding the tactics employed by defendants' counsel in the presentation of the merits of defendants' motion to dismiss. Magistrate Judge Nelson's concerns are best expressed in her own words, which are set forth below in relevant part:

> The Court expresses serious concern regarding an argument made in Defendant's brief [in support of its motion to dismiss]. In In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig., No. 99-1309, 2002 WL 1023150, at *3 (D. Minn. May 17, 2002) (Magnuson, J.), the Court held that fraudulent concealment would not toll the statute of limitations for the plaintiffs' statutory (CFA) fraud claims. Alternatively, in *dicta*, the Court noted that even if fraudulent concealment did toll the limitations period for CFA claims, "Plaintiffs have failed to show that they did not have a reasonable opportunity to discover the alleged fraud until their premiums did not vanish as promised." Id. In support of that *dicta*, the Court cited evidence submitted by the defendants (Wahl Aff. Ex. 40 at 2) ... that at least one of the plaintiffs, "Mr. Deon Thompson [not to be confused with Dean Thompson], received annual statements from Lutheran Brotherhood that told him as early as 1988 that his policy would terminate in 1993 if no further premiums were paid" and [that] "[t]hese statements should have alerted Plaintiffs to the fact that the policies were not performing as Lutheran Brotherhood allegedly promised they would." Id.
>
> Later ... Lutheran Brotherhood relied on the Court's *dicta* in the May 17, 2002 Order to argue that the plaintiffs' common law fraud claim was also barred by the statute of limitations because the plaintiffs should have known of the existence of the claim. Id. at *9. The Court rejected this argument.... The Court explained that the evidence it relied on as the basis for its *dicta* in the May 17, 2002 Order, namely the evidence that Deon Thompson received a notice in 1988, was erroneous because that notice, which was submitted as evidence by Lutheran

Brotherhood's attorneys, "related to a policy that is not at issue here." Id. The Court then admonished Lutheran Brotherhood:

> Lutheran Brotherhood should have brought that error to the Court's attention, but at the least, Lutheran Brotherhood should not now attempt to capitalize on that error by using the Court's mistaken assumption as support for the instant Motion. The Court reminds counsel for both parties of their duties as officers of the Court, and will not countenance misrepresentations of the facts or the law, whether intentional or inadvertent. *See* Pinkham v. Sara Lee Corp., 983 F.2d 824, 833 (8th Cir. 1992).

Id. at 10.

> Remarkably, in this case, Lutheran Brotherhood, again, attempts to capitalize on the evidentiary error from the May 17, 2002 Order. In this case, Lutheran Brotherhood states that "[c]ourts do not hesitate to dismiss claims where facts pleaded, or otherwise on the record, show that a party knew or should have known of the facts long enough before commencing their action that the action is time-barred." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 4). In support of that proposition, Lutheran Brotherhood leads with a citation to the May 17, 2002 Order: "*See In re Lutheran Bh'd*, 2002 WL 1023150, at *3 (plaintiffs had the opportunity, as a matter of law, to discover claims where the record showed that plaintiffs received statements that 'should have alerted Plaintiff[] to the fact that the policies were not performing as Lutheran Brotherhood allegedly promised they would')." (Def.s' Reply Mem. in Supp. of Mot. to Dismiss, at 4). The parenthetical explanation of the May 17, 2002 Order is not only patently erroneous as a matter of law ... but Lutheran Brotherhood, again, by seeking to do what Judge Magnuson admonished them not to do, seeks to capitalize on the "Court's mistaken assumption as support for" the Motion to Dismiss in this case. Id. *10.

(R&R at 16, n.12.)

In their objections to the report and recommendation, defendants contend that Magistrate Judge Nelson misunderstands the sequence of events. Defendants argue that, until the July order was issued, they believed that the dictum of the May order stood for the proposition that any statement revealing a fluctuation in interest rates, even one pertaining to a policy that was not the subject of a plaintiff's claim, was sufficient to place a particular plaintiff on notice that all his policies were not performing as originally projected. Based on that interpretation of the dictum, defendants cited the May order to Magistrate Judge Nelson in their reply memorandum, filed May 13, 2003, and at argument on June 26, 2003. Defendants claim they had no reason to doubt the soundness of their argument until Judge Magnuson issued his July order, at which time the briefing and argument of defendants' motion to dismiss in this case had already been completed. Defendants therefore conclude that "the chronology of events demonstrates [their] good faith." (Defs.' Obj. at 2.)

Defendants' excuse is weak. Three months elapsed between Judge Magnuson's issuance of the July order and Magistrate Judge Nelson's issuance of her report and recommendation. During this time defendants remained silent and made no effort to inform Magistrate Judge Nelson that Judge Magnuson's July order had undermined the validity of their reliance upon his May order. Therefore, even if Magistrate Judge Nelson mistakenly believed that

defendants had read the July order when they made their arguments, defendants' subsequent failure of candor wholly justifies her admonishment of them.[1]

Defendants are correct that they and their counsel may not be sanctioned inasmuch as neither Rule 11 of the Federal Rules of Civil Procedure or any of the Minnesota Rules of Professional Conduct explicitly imposes an ongoing duty to update briefs after they are filed with the court. See Minnesota Rules of Professional Conduct R. 3.3 & 4.1 (2002); Samuels v. Wilder, 906 F.2d 272, 274-75 (7th Cir. 1990). To say that counsel's silence is not punishable, however, is not to say that Magistrate Judge Nelson or any other judicial officer of this district should tolerate it or let it pass without comment. Magistrate Judge Nelson's observations in footnote 12 of the report and recommendation were an appropriate exercise of her authority to demand the highest standards of practice and candor among the members of the federal bar. If the litigation should reach a stage where counsel appear before this court, they will find its expectations no less

[1] Judge Magnuson's July order expressed quite clearly his concern over counsel's professional conduct. Whether or not counsel believed the concern was justified, they should have taken prompt action to avoid allowing their arguments before Magistrate Judge Nelson to compound the problem. A letter to the court and plaintiffs' counsel of a single paragraph, stating that defendants would no longer rely on Judge Magnuson's May order as persuasive authority for their arguments, would have sufficed to lay the matter to rest. Counsel, however, chose not to take such action. Consequently they are in no position to complain about Magistrate Judge Nelson's comments.

stringent than those of Magistrate Judge Nelson. Defendants' request that footnote 12 be stricken is accordingly denied.

**II. Adequacy of Pleading - Fraud and Fraudulent Concealment**

Defendants object to the magistrate judge's conclusion that plaintiffs have adequately pleaded fraud and fraudulent concealment. Defendants' objection is based on a syllogism. For their major premise, they point out that plaintiffs allege that defendants discovered in 1987 that approximately one-third of its universal life policies would "self destruct." (Compl. ¶ 53.) Defendants' minor premise is that 1987 is later than 1985, the year when plaintiff Dean Thompson purchased one of defendants' policies. Defendants therefore conclude that plaintiffs' pleading is inadequate because defendants could not have, in 1985, fraudulently concealed information they did not learn until 1987.

As plaintiffs point out, however, defendants ignore a myriad of other allegations in the complaint. For example, plaintiffs allege that, in approximately 1982, defendants adopted a business strategy that would allow them to capitalize on a surge in interest rates by enticing customers with projections that would be unsustainable over the long term. (See Compl. ¶ 26.) Plaintiffs allege that elements of the strategy included a change in the way defendants recognized contract loans, a change in the way defendants calculated dividend projections, defendants' introduction of a new "universal life" insurance product,

defendants' adoption of the vanishing premium concept, and defendants' liberalization of its rules against internal replacement of customers' policies. (Compl. ¶¶ 26-27.)

Plaintiffs further allege that, pursuant to their strategy, defendants failed to disclose the impact that increasing insurance costs and declining interest rates would have on their policies' performance. (Compl. ¶ 29.) Plaintiffs also allege that defendants employed a software program to generate misleading projections regarding their policies' performance and that defendants failed to disclose that the results generated by the software were based on assumptions that defendants knew were faulty. (Compl. ¶ 30.) It is clear from the context of preceding and following paragraphs that the allegations in paragraphs 29 & 30 apply to a period of time beginning in approximately 1982.

In discussing the adequacy of plaintiffs' fraudulent concealment claim, the magistrate judge cited the allegations already discussed and others. (R&R at 14.) Considering all the allegations of the complaint, the magistrate judge correctly held that plaintiffs adequately pleaded fraud and fraudulent concealment. Defendants, aside from their misguided syllogism, cite no authority to the contrary. Accordingly, the magistrate judge's conclusion is affirmed.

**III. The 1994 Update - Fraudulent Concealment**

Defendants also argue that plaintiffs may not rely on the doctrine of fraudulent concealment because plaintiffs should have become aware of their claims in 1994 when defendants sent them an update disclosing that their policies' cash value was less than projected. The magistrate judge correctly determined that plaintiffs must establish that they were actually unaware of the facts on which their claims are based, a point which defendants concede. See Williamson v. Prasciunas, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003). Rather, defendants contend that the magistrate judge erred in determining which facts constitute the "defect" that is the basis for plaintiffs' claims. (See Defs.' Obj. at 7.)

Defendants argue that the "defect" which underlies plaintiffs' claims is the failure of the policies to perform as initially projected. Defendants contend that when plaintiffs "became alarmed" in 1994 about the performance of their policies, they had the information they needed to pursue their claims for relief. (Defs.' Obj. at 7-8.)

Defendants misapprehend the nature of the "defect" that gives rise to plaintiffs' claims. Plaintiffs' claims are not based upon the failure of their policies to perform well. There is no basis in law for a bare claim that performance of an investment did not meet initial expectations. Rather, as the magistrate judge aptly pointed out, the gravamen of plaintiffs' claims is defendants'

failure to disclose material information regarding the policies. (R&R at 14.) As the magistrate judge noted, the 1994 update did not impart the material information which defendants allegedly concealed from plaintiffs. The 1994 update only suggested that plaintiffs may be suffering injury.

Defendants cite Veldhuizen v. A.O. Smith Corp., 839 F. Supp. 669 (D. Minn. 1993), for the proposition that plaintiffs' knowledge of their injury bars them from invoking fraudulent concealment. In Veldhuizen, the defendant induced the plaintiff, a farmer, to purchase certain grain silos by promising "better feed, improved herd health, increased milk production and lower costs." 839 F. Supp. at 671-72. Later, plaintiff observed that his cows produced more milk while eating bought feed as opposed to grain stored in defendant's silos. Id. at 673. Thereafter plaintiff consulted two veterinarians who identified the silos as the cause of the reduced milk production. Id. at 673. Plaintiff, however, did not credit the veterinarians' conclusion and consequently did not file suit against the defendant until more than ten years later. Id. at 673. Plaintiff argued that the doctrine of fraudulent concealment tolled the statute of limitations. See id. The court granted defendant's motion for summary judgment, holding "that regardless of any concealment the limitations period began to run, as a matter of

law, in the late 1970s when [the veterinarians] attributed the cause of the problems experienced by the Veldhuizens to the Harvestore silos." 839 F. Supp. at 669.

Veldhuizen is inapposite to the present case. Veldhuizen discovered his injury when he noted that his herd's milk production was suffering. It was not until Veldhuizen consulted the veterinarians, however, that he discovered the defendant's silos were the cause of his injury. The court held that Veldhuizen's claim was barred as a matter of law not because he discovered his injury, but rather because Veldhuizen sat on his rights after two experts informed him that the defendant had caused his injury.

In this case, although plaintiffs discovered the fact of their injury in 1994, they did not then necessarily discover that the injury was caused by a fraud allegedly perpetrated by defendants. Investment performance, like milk production, is influenced by many factors. The ill news brought by the 1994 update did not, of itself, indicate wrongdoing on the part of the defendants. Whether the update obligated plaintiffs to investigate the matter more diligently than they did is, as rightly observed by the magistrate judge, a fact question not amenable to determination in the context of a motion to dismiss. See Force v. ITT Hartford Life & Annuity Ins. Co., 4 F. Supp. 2d 843, 860 (D. Minn. 1998). In any event,

the magistrate judge correctly held that the 1994 update does not necessarily foreclose application of the fraudulent concealment doctrine to plaintiffs' claims.

## IV. Consumer Fraud Act and Deceptive Trade Practices Act Claims - Applicability of Fraudulent Concealment Doctrine

Finally, defendants object to the magistrate judge's conclusion that the doctrine of fraudulent concealment can apply to toll the statute of limitations with respect to plaintiffs' claims under the Prevention of Consumer Fraud Act ("CFA"), Minn. Stat. §§ 325F.68-325F.70, and the Uniform Deceptive Trade Practices Act ("DTPA"), Minn. Stat. §§ 325D.43-325D.48. In support of their objection, defendants cite Judge Magnuson's May order. See In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 2002 WL 1023150, at *3 (D. Minn. May 17, 2002) ("It is not clear to this Court that the doctrine of fraudulent concealment is different than a discovery allowance, which both parties agree does not apply to CFA claims.")

Judge Magnuson's order notwithstanding, the magistrate judge correctly concluded that the doctrine of fraudulent concealment is distinguishable from the discovery rule under Minnesota law. See Fabio v. Bellomo, 504 N.W.2d 758, 764 n.2 (Minn. 1993) (discussing discovery rule and fraudulent concealment as independent doctrines); Giles v. Sanford Mem'l Hosp. & Nursing Home, 371 N.W.2d 635, 638 (Minn. Ct. App. 1985). The magistrate judge was also right to note that the Minnesota Court of Appeals has indicated in

dicta that the doctrine of fraudulent concealment does indeed apply to DTPA claims. See Appletree Square I Ltd. P'ship v. Investmark, Inc., 494 N.W.2d 889, 892 (Minn. Ct. App. 1993). Further, the court agrees with the magistrate judge's conclusion that the doctrine of fraudulent concealment may toll the statute of limitations for CFA and DTPA claims.

Accordingly, after a de novo review of the file and record, **IT IS HEREBY ORDERED THAT:**

1. The report and recommendation of the magistrate judge [Docket No. 33] is adopted in its entirety.

2. Defendants' motion to dismiss [Docket No. 19] is denied.

3. Pursuant to the magistrate judge's order of December 16, 2003 [Docket No. 38], defendants shall have until ten days after the issuance of this order to answer or otherwise respond to plaintiffs' amended complaint.

Dated: January 15, 2004

David S. Doty, Judge
United States District Court